UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

BANILLA GAMES, INC., and
GROVER GAMING, INC.,

           Plaintiffs,

v.

                                   Action No. 2:22cv212

RUSSELL CHARLES HINES,

           Defendant.

UNITED STATES MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

This matter is before the Court on plaintiffs', Banilla Games, Inc. ("Banilla"), and Grover

Gaming, Inc. ("Grover"), motion for default judgment against defendant Russell Charles Hines

("Hines"). ECF No. 11. On September 14, 2022, this matter was referred to the undersigned for

a report and recommendation pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure

72(b). ECF No. 13.

For the reasons stated herein, the Court **RECOMMENDS** that plaintiffs' motion be

**GRANTED IN PART and DENIED IN PART.**

## I.  PROCEDURAL HISTORY

On May 17, 2022, Banilla and Grover filed a complaint against Hines seeking relief for

violations of the Copyright Act, 17 U.S.C. § 101 *et seq.* (count one), contributory copyright

infringement (count two), false designation of origin and unfair methods of competition, 15 U.S.C.

§ 1125 (count three), common law unfair competition (count four), trademark infringement, Va.

Code § 59.1-92.12 (count five), misappropriation of trade secrets, 18 U.S.C. § 1836(b) (count six),

and Virginia's Uniform Trade Secrets Act, Va. Code § 59.1-336 *et seq.* (count seven). ECF No. 1. Plaintiffs also filed a motion for preliminary injunction. ECF No. 3. On May 24, 2022, plaintiffs filed a proof of service that indicates that Hines was personally served the summons and complaint on May 18, 2022, in Portsmouth, Virginia. ECF No. 8. On June 13, 2022, plaintiffs requested, and the Clerk entered, a default as to Hines for failure to file an answer. ECF Nos. 9, 10.

On July 25, 2022, plaintiffs filed a motion for default judgment and memorandum in support of the default judgment with respect to copyright infringement under the Copyright Act.[1] ECF Nos. 11, 12. The plaintiffs also filed two declarations in support of the motion—one signed by David Brooks Lee, Chief Sales Officer ("CSO") of Banilla, and the other by Stephen M. Faraci, Sr., Esq., counsel to plaintiffs. ECF Nos. 12-1, 12-2. Plaintiffs seek the following relief: $300,000.00, plus prejudgment interest from December 15, 2021, and post-judgment interest; $13,080.50 for attorneys' fees and costs; a permanent injunction; an order directing Hines to deliver to the Court the illicit games and to "deliver up for destruction to Grover all products, advertisements, promotional materials, packaging, and other items in his possession or under his control bearing the Copyrighted Work." ECF No. 12, at 15–17. Hines did not respond to the motion and the time for doing so has expired.

## II.    FACTUAL BACKGROUND

Grover creates and produces "high-quality and reliable electronic games of skill." ECF No. 1, ¶ 11. Grover develops and designs software components for its games in-house, "including the games' source code, object code, 3-D and other artwork, static images, and other visual and

---

[1] Although the complaint sets forth seven claims for relief, ECF No. 1, plaintiffs seek default judgment on the copyright infringement claim. ECF No. 12, at 8–15.

audiovisual effects." *Id.* Grover obtained a federal copyright on May 24, 2021, "for the computer file and associated audiovisual effects used in its Fusion 4 video game." *Id.* ¶ 1. Grover has also applied to the United States Patent and Trademark Office for the trademark "FUSION" that Grover has been using since February 28, 2017. *Id.* ¶¶ 14–15. Banilla serves as Grover's exclusive distributor of the Fusion 4 video game. *Id.* ¶ 3. The Fusion games are distributed "in stand-alone gaming cabinets[] or as independent software." *Id.* ¶ 22. The Fusion games are generally distributed in the "Georgia [Coin Operated Amusement Machine] market." *Id.*

This case concerns Hines' "use, distribution, public display, and/or sale" of Grover's copyrighted work without permission. *Id.* ¶ 2. In March 2022, plaintiffs learned that Hines "was in possession of, using, and/or selling and/or placing unauthorized, pirated, or hacked versions" of the Fusion 4 video game ("illicit games"). *Id.* ¶ 34. In December 2021, Hines "sold at least two . . . stand-alone gaming cabinets" containing the illicit games. *Id.* ¶ 35. Plaintiffs believe that Hines was able to obtain the illicit games because a "third party unpackage[ed], decompile[ed], and de-obfuscat[ed] Grover's trade secrets." *Id.* ¶¶ 37–38. Hines sold the illicit games on Facebook Marketplace for "$3,500.00/unit[] or $7,000.00 total[,]" which is "significantly less than [the sales price of] genuine products." *Id.* ¶¶ 39, 45. In CSO Lee's declaration, he states that "[a] genuine FUSION 4 board has a retail price of $4,995.00 . . . [and] with all the components in a steel HYDRO FUSION cabinet (which includes a 43" vertical touch-screen LED monitor) has a retail price of $9,590.00." ECF No. 12-1, ¶¶ 1, 4. Plaintiffs state that the illicit games "are nearly identical to the Copyrighted Work, in that they present the same game play and almost identical artwork[, but] perform at slower speeds . . . [and] present dimmer artwork." *Id.* ¶ 42.

### III.    JURISDICTION, VENUE, AND SERVICE OF PROCESS

To enter a default judgment, the Court must have subject matter jurisdiction over the case and personal jurisdiction over any defaulting party. Venue must also be proper. Here, the Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338 because this case arises under federal law, the Copyright Act. ECF No. 1, ¶ 7.[2] The Court has personal jurisdiction over Hines because he is a resident of the Commonwealth of Virginia. *Id.* ¶ 6; *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."). Further, pursuant to 28 U.S.C. § 1391(b)(1), venue is proper because Hines "resides in this District."[3] ECF No. 1, ¶ 10.

Before a federal court may exercise personal jurisdiction over Hines, the procedural requirements of service of summons must be satisfied. *See Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Pursuant to Federal Rule of Civil Procedure 4(e)(2)(A), an individual within a judicial district of the United States may be served by delivering a copy of the summons and complaint to the individual personally. Here, Hines is a resident of Virginia and on May 24, 2022, plaintiffs filed a proof of service that indicates that Hines was personally served on

---

[2] In the complaint, plaintiffs also claim diversity jurisdiction under 28 U.S.C. § 1332(a), and supplemental jurisdiction under 28 U.S.C. § 1367. ECF No. 1, ¶¶ 8–9.

[3] Plaintiffs also state that venue is proper under 28 U.S.C. §§ 1391(b)(2)–(3), 1400(a) because "a substantial part of the events or omissions giving rise to the claim occurred in this District, and because a substantial part of the property that is the subject of this action is situated in this District; specifically, in the Tidewater area." ECF No. 1, ¶ 10.

May 18, 2022[4] in Portsmouth, Virginia. ECF No. 8. Therefore, the undersigned finds that Hines was properly served.

## IV.   LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure governs entries of default and default judgments. Pursuant to Rule 55(a), the Clerk must enter default against a party that "has failed to plead or otherwise defend" against an action. After the Clerk has entered default, a plaintiff may seek a default judgment against a defendant pursuant to Rule 55(b) when the claim is not for a sum certain. A court is required to "exercise sound judicial discretion" when considering whether to enter default judgment, "and the moving party is not entitled to default judgment as a matter of right." *EMI Apr. Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009) (citing *Sentry Select Ins. Co. v. LBL Skysystems (U.S.A.) Inc.*, 486 F. Supp. 2d 496, 502 (E.D. Pa. 2007)).

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, before entering default judgment, a court must evaluate the sufficiency of the allegations to determine if the complaint states a cause of action that supports the relief sought. *See Globalsantafe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."); *see also Ryan*, 253 F.3d at 780 ("The court must . . . determine whether the well-pleaded allegations in [the] complaint support the relief sought in th[e] action."); *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998) (holding that the

---

[4] Although the original proof of service has conflicting dates, *see* ECF No. 14, the plaintiffs later provided an affidavit of service from the process server clarifying that Hines was personally served on May 18, 2022. ECF Nos. 15, 15-1.

district court erred in granting default judgment to plaintiff where plaintiff failed to state a valid claim).

## V.   ANALYSIS

### A.   Hines has infringed Grover's copyright.

The Copyright Act, 17 U.S.C. § 101 *et seq.*, provides a copyright owner with exclusive rights to do the following:

> (1) to reproduce the copyrighted work in copies or phonorecords;
>
> (2) to prepare derivative works based upon the copyrighted work;
>
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
>
> . . .
>
> (5) in the case of . . . pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly[.]

17 U.S.C. § 106(1)–(3), (5).   Two elements must be proven to establish infringement:  "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (*citing Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 548 (1985)).   A certificate of copyright registration "made before or within five years after first publication of the work shall constitute prima facie evidence of validity of the copyright." 17 U.S.C. § 410(c).   Furthermore, "[t]he term 'copying' is interpreted broadly and encompasses the infringing of any of the copyright owner's five exclusive rights." *Softech Worldwide, LLC v. Internet Tech. Board. Corp.*, 761 F. Supp. 2d 367, 372 (E.D. Va. 2011) (quoting *U-Haul Int'l, Inc. v. WhenU.com, Inc.*, 279 F. Supp. 2d 723, 729 (E.D. Va. 2003)).   The five exclusive rights are distribution, reproduction, public display, public performance, and derivative use. *Id.* (citing 17 U.S.C. § 106).

6

Plaintiffs allege that Grover owns a federal copyright for the "computer file and associated audiovisual effects used in its Fusion 4 video game," and that Grover received a certificate of registration from the United States Copyright Office. ECF No. 1, ¶ 1; ECF No. 1-3. These facts satisfy the first element. Plaintiffs further allege that Hines was "using, and/or selling and/or placing unauthorized, pirated, or hacked versions" of the Fusion 4 video games via Facebook Marketplace. ECF No. 1, ¶¶ 34, 45. These facts satisfy the second element, namely Hines' distribution and display of unauthorized copies of the Fusion 4 video game. *See, e.g., Advance Mag. Publishers, Inc. v. Leach*, 466 F. Supp. 2d 628, 637 (D. Md. 2006) (finding that the defendant violated the plaintiff's exclusive right to distribute its copyrighted work by "making available unauthorized copies"); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 935–41 (2005) (holding companies contributorily liable for copyright infringement for facilitating users' transmissions of unauthorized digital copies of copyrighted works). Since Hines has defaulted by not responding after being served, the facts set forth in the complaint are deemed to be admitted if the complaint properly sets forth a claim. *TR-Equipement, Ltd. v. M12International, Inc.*, No. 1:08cv226, 2008 WL 4813327, at *3 (E.D. Va. Oct. 28, 2008). Therefore, the complaint states a valid claim of copyright infringement against Hines. The Court must next determine the appropriate relief.

**B.    Requested Relief**

**1.    Plaintiffs are entitled to statutory damages under the Copyright Act.**

Plaintiffs assert a claim of willful copyright infringement against Hines and request statutory damages under 17 U.S.C. § 504(c)(2) "in the amount of $300,000.00, representing Defendant's unauthorized and willful use of Grover's Copyrighted Work in at least two instances." ECF No. 12, at 15.

7

The Copyright Act provides for an award of damages of "not less than $750 or more than $30,000" for each non-willful infringement, and "not more than $150,000" for each willful infringement.   17 U.S.C. § 504(c)(1), (2).   The Copyright Act affords courts discretion in determining the proper amount of statutory damages. *EMI Apr. Music*, 618 F. Supp. 2d at 508.  In exercising this discretion, a court considers the following: "expenses saved by the defendant in avoiding a licensing agreement; profits reaped by defendant in connection with the infringement; revenues lost to the plaintiff; [] the willfulness of the infringement[,]" and the need to discourage wrongful conduct. *Id.* at 509 (citing *Cross Keys Pub'g Co., Inc. v. Wee, Inc.*, 921 F. Supp. 479, 481 (W.D. Mich. 1995)).

The Court begins its analysis by determining whether there are sufficient alleged facts to conclude that Hines' infringement of Grover's copyright was willful and sufficient to award plaintiffs the statutory maximum amount of $150,000.00 per violation.  Although not defined in the Copyright Act, courts have defined willful copyright infringement as the defendant having knowledge, "either actual or constructive, that its actions constitute an infringement, or recklessly disregards a copyright holder's rights." *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 799 (4th Cir. 2001) (internal citations and quotations omitted). And, "[e]vidence that notice has been accorded to the defendants before the specific facts found to have constituted infringement occurred is perhaps the most persuasive evidence of willfulness." *MTI Enters. Inc. v. Theaterpalooza Cmty. Theater Prods., Inc.*, No. 1:18cv650, 2018 WL 6928927, at *4 (E.D. Va. Dec. 7, 2018), *report and recommendation adopted*, No. 1:18cv650, 2019 WL 99267 (E.D. Va. Jan. 3, 2019) (quoting *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 496 (4th Cir. 1996)).

8

Several cases are instructive to determine whether Hines' conduct is willful and justifies maximum statutory damages. In *MTI Enterprises, Inc.*, the Court found that the defendant had willfully infringed plaintiff's copyright and was liable for the maximum statutory award because the defendant (1) had actual knowledge of the copyright; (2) did not attempt to resolve the issue; (3) ignored plaintiff's notices of infringement; (4) continued to advertise the use of the copyrighted materials; and (5) provided misleading statements to the press regarding the issue. *MTI Enters. Inc.*, 2018 WL 6928927, at \*4–5; *see also Ez-XBRL Sols., Inc. v. Chapke*, No. 1:17cv700, 2018 WL 5808724, at \*9 (E.D. Va. Sept. 25, 2018), *report and recommendation adopted*, No. 1:17cv700, 2018 WL 5809406 (E.D. Va. Oct. 22, 2018) ("When a defendant's acts are 'clearly willful,' courts in this district have been willing to grant maximum statutory damages.").

The Court has also found maximum statutory penalties were justified where a defendant published plaintiff's, the Graduate Management Admission Test, secure test questions on his website without a license. *Graduate Mgmt. Admission Council v. Raju*, 267 F. Supp. 2d 505, 511–12 (E.D. Va. 2003). The Court found the defendant's infringement was willful and knowing and that the defendant "attempted to create the false impression that he is affiliated with, sponsored by, approved by and/or endorsed by GMAC." *Id.* at 509–10; *see also GmbH v. Ilnitskiy*, No. 1:17cv415, 2018 WL 1882823, at \*7 (E.D. Va. Jan. 25, 2018), *report and recommendation adopted*, No. 1:17cv415, 2018 WL 844401 (E.D. Va. Feb. 13, 2018) (finding that maximum statutory damages are appropriate because the defendant's infringement was "clearly willful, as the infringement was made up of deliberate acts in knowing disregard for Plaintiff's rights[,]" such as replicating plaintiff's works and displaying them during the defendant's promotion and sale of counterfeit products "through multiple electronic means in a coordinated effort").

9

Even upon a finding of willful copyright infringement, the Court does not always impose statutory maximum damages.  In *UMG Recordings, Inc. v. Kurbanov*, the Court found that an enhanced statutory award of $50,000.00 per work was appropriate because plaintiffs had sufficiently proved that the defendant's copyright infringement was willful.  *UMG Recordings, Inc. v. Kurbanov*, No. 1:18cv957, 2021 WL 6492907, at *8–10 (E.D. Va. Dec. 16, 2021), *report and recommendation adopted*, No. 1:18cv957, Doc. No. 144 (E.D. Va. Feb. 10, 2022).  Notably, plaintiffs "sent infringement notices and cease-and-desist letters to the Defendant, yet he [] continued to infringe their copyrights." *Id.* at *9.  And, the defendant had actual and constructive knowledge of plaintiffs' copyrights because the "Defendant's Websites explicitly encourage Users to download Plaintiffs' copyrighted audio recordings for free. And Defendant has received actual notices . . . instructing him to disable [] the infringing functions of the Websites, yet he continued." *Id.*

Similarly, the Court has also found that a defendant's actions were willful and awarded $6,000.00 when the defendant acted deliberately by distributing a copyrighted motion picture in violation of plaintiff's rights and the defendant received "multiple notices informing him of the wrongful nature of his conduct, and yet he continued with his infringing activities." *Headhunter, LLC v. Valdez*, No. 1:17cv793, 2018 WL 10435244, at *3 (E.D. Va. Feb. 22, 2018); *see also Broad. Music, Inc. v. Fossils, Inc.*, No. 1:14cv755, 2015 WL 4127622, at *9 (E.D. Va. July 7, 2015) ("[I]n light of Defendants' willful conduct and disregard of [plaintiff's] repeated offers to enter into a licensing agreement, the undersigned recommends $5,000.00 per infringement as an appropriate statutory damages award . . . for a total of $25,000.00.").

Furthermore, in *Spencer v. Yellowcabservices.com*, the Court ruled that the defendant's conduct was willful because the defendant "had, at very least, constructive knowledge of Plaintiff's

10

copyright" from plaintiff's website where the defendant got the copyrighted photos because plaintiff displayed the phrase "© All Rights Reserved" on its website. *Spencer v. Yellowcabservices.com, LLC*, No. 1:20cv368, 2020 WL 13200117, at *3, 5 (E.D. Va. Nov. 19, 2020). Although willful, the Court found that statutory damages of $25,000.00—which is "well in excess of the statutory minimum" but still below the maximum for non-willful violations under the Copyright Act—for copying plaintiff's photograph onto five of the defendant's websites was sufficient to remedy the harm and deter future infringement. *Id.* at *5.

Here, plaintiffs do not set forth sufficient facts to support a finding of willfulness and an award of maximum statutory damages. Plaintiffs have not alleged any actions taken to notify Hines of the copyright infringement nor facts that Hines actually knew of the copyright. Plaintiffs state that "Defendant knowingly sold at least two (2) unauthorized, pirated, or hacked versions of the Copyrighted Work for use by end-users at a substantially lower cost of $3,500.00 per unit than genuine units would cost." ECF No. 12, at 12. Therefore, plaintiffs assert that Hines acted in "reckless disregard of the possibility that his conduct represented infringement when he knowingly used, possessed, and sold the Illicit Games at prices that were well below the market price for genuine units." *Id.* However, there is no evidence that Hines knew or should have known the genuine price of a unit. The complaint itself states that a third party, not Hines, was responsible for "unpackaging, decompiling, and de-obfuscating Grover's trade secrets" that allowed the third party to sell hacked versions of the Fusion 4 video game. ECF No. 1, ¶¶ 37–38. Therefore, Hines apparently bought and then sold the illicit game but did not himself hack or recreate the Fusion 4 game. *See id.; Priority Payment Sys., LLC v. Intrend Software Sols.*, No. 1:15-cv-04140-AT, 2016 WL 8809877, at *4 (N.D. Ga. Nov. 28, 2016) (awarding maximum statutory damages after finding that defendants "engaged in a deceptive scheme to steal the . . . source code and undertook a cloak-

11

and-dagger operation to conceal their actions"). Plaintiffs do not allege facts that tie the unnamed third party's actions to Hines' knowledge regarding whether the material was copyrighted or not. The only knowledge of Grover's copyright that can be imputed to Hines is constructive knowledge based on the copyright being registered and publicly available. These facts do not support a finding of willfulness and an award of maximum statutory damages. Thus, the appropriate statutory damages range is $750.00 to $30,000.00 per infringement, as prescribed by section 504(c)(1).

Plaintiffs are entitled to some statutory damages. In CSO Lee's declaration, he states that the genuine cabinets are sold at a retail price between $4,995.00 and $9,590.00, depending on whether it was a Fusion 4 game board alone or a Fusion 4 game "with all the components in a steel [hydro fusion] cabinet." ECF No. 12-1, ¶ 4. Neither the complaint nor the memorandum in support of the default judgment explicitly state what type of cabinets Hines sold. Nor do plaintiffs' submissions identify the net revenues lost due to defendant's sales; although such are certain to be less than the full retail price at which the genuine cabinets are sold. Hines also likely did not make the $3,500.00 in profits from selling each of the illicit games because he had to originally buy the cabinets from the third party. There is no further evidence provided by the plaintiffs regarding profits reaped by Hines, plaintiffs' lost revenues from Hines' actions, or expenses saved by Hines by buying and subsequently selling a hacked version of the Fusion 4 game, rather than a genuine unit. *See EMI Apr. Music*, 618 F. Supp. 2d at 509 (listing factors courts should consider in determining damages). The Court recognizes the need to deter wrongful conduct and will award plaintiffs damages above the lost profits on the two cabinets Hines sold based on the more expensive cabinet price ($9,590.00). Accordingly, the Court finds that awarding plaintiffs $10,000.00 per violation is appropriate. The Court recommends a total of $20,000.00 in statutory damages be awarded to plaintiffs.

12

2.      **It is appropriate to award plaintiffs pre- and post-judgment interest.**

Plaintiffs also request "pre-judgment interest from December 15, 2021, pursuant to Virginia Code § 6.2-302, and post-judgment interest pursuant to 28 U.S.C. § 1961(a)" on the sum of plaintiffs' statutory award. ECF No. 12, at 15–16.

Prejudgment interest is at an annual rate of six percent (6%) in the Commonwealth of Virginia. Va. Code. Ann. § 6.2-302(B) (2010). However, under the Copyright Act, there is no explicit reference to the availability of prejudgment interest. *See* 17 U.S.C. § 504(c). This Court has found that prejudgment interest is *available* in copyright infringement claims. *See Tattoo Art, Inc. v. TAT Int'l, LLC*, 794 F. Supp. 2d 634, 664 (E.D. Va. 2011), *aff'd*, 498 F. App'x 341 (4th Cir. 2012) (citing *U.S. Payphone, Inc. v. Execs. Unlimited of Durham, Inc.*, 931 F.2d 888 (4th Cir. 1991)). It is a separate question whether prejudgment interest is appropriate in this matter "in light of considerations of fairness and Congressional intent." *Id.* Upon review of this case, the Court awards prejudgment interest at a rate of six percent (6%). *GmbH*, 2018 WL 1882823, at *8 (finding that, in "the absence of a request by a plaintiff for a particular interest rate," the Court will award "Virginia's standard judgment interest rate"). Hines bought and sold two illicit games that violated Grover's copyright. Importantly, Hines failed to appear in this lawsuit and profited from selling the illicit games. Therefore, awarding prejudgment interest would not be inequitable and would aid in both deterring copyright infringement and making plaintiffs whole. *See Tattoo Art, Inc.*, 794 F. Supp. 2d at 664–65. The prejudgment interest should be calculated from December 15, 2021, the date Hines first infringed Grover's copyrights.[5] ECF No. 12, at 7, 15–16.

---

[5] Although plaintiffs only allege that the infringement by Hines occurred in "December 2021" in the complaint, ECF No. 1, ¶ 35, and "[i]n or around December 2021" in the memorandum in support of the motion for default judgment, ECF No. 12, at 7, they request prejudgment interest to be calculated from December 15, 2021, *id.* at 16. The Court finds that awarding prejudgment

A court may also allow post-judgment interest "on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Similar to prejudgment interest, awarding post-judgment interest to plaintiffs is appropriate in this case to ensure that plaintiffs receive the proper value of the damages awarded against Hines. Post-judgment interest is to be calculated in accordance with 28 U.S.C. § 1961.

### 3. Plaintiffs should be awarded some of the requested injunctive relief.

Plaintiffs also request a permanent injunction restraining "Hines, and each of his agents, employees, attorneys, and all those in active concert or participation with him" from using, publicizing, displaying, and marketing the illicit games. ECF No. 12, at 16. Additionally, plaintiffs request that Hines and his agents "immediately deliver to the Court for impoundment the Illicit Games violating Grover's Copyrighted Work." *Id.* They also seek an accounting to Grover of the following:

a.  the number of such Illicit Games in Defendant's possession, custody, or control;

b.  where each Illicit Game was found;

c.  the identity of the individual or individuals having possession, custody or control of each Illicit Game at the time it was found; and

d.  a sworn explanation of how each Illicit Game was obtained, duplicated, or distributed, including the identity of all persons involved in such activity for each Illicit Game.

*Id.* at 16–17. Plaintiffs also request "entry of an order directing [Hines] to deliver up for destruction to Grover all products, advertisements, promotional materials, packaging, and other items in his possession or under his control bearing the Copyrighted Work." *Id.* at 17.

---

interest starting in mid-December is appropriate because plaintiffs do not appear to know precisely when Hines sold the illicit games.

Under the Copyright Act, a court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). "Injunctions are regularly issued pursuant to the mandate of Section 502, because the public interest is in the interest in upholding copyright protections" and courts "regularly issue injunctions as part of default judgments." *Wilson v. Nat'l Bikers Roundup Inc.*, C/A No. 3:15-4862-MGL-SVH, 2017 WL 9275157, at *4 (D.S.C. May 12, 2017), *report and recommendation adopted*, No. CV 3:15-04862-MGL-SVH, 2017 WL 2644209 (D.S.C. June 20, 2017) (quoting *Arista Recs., Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1314 (S.D. Fla. 2003)). To obtain a permanent injunction, a plaintiff must show:

(1) that it has suffered an irreparable injury;

(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

(3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

(4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). The Court will discuss each element in turn.

First, plaintiffs have demonstrated that they have suffered, and will continue to suffer, irreparable harm. The Fourth Circuit has stated that "[i]rreparable injury often derives from the nature of copyright violations, which deprive the copyright holder of intangible exclusive rights." *Christopher Phelps & Assocs., LLC*, 492 F.3d at 544. Here, the undersigned has already found that Hines infringed Grover's copyright. Further, Hines is "capable of selling additional Illicit Games[,]" the illicit games Hines has sold "perform at slower speeds" than Grover's Fusion 4

15

game, and "the artwork in the Illicit Games present dimmer artwork than the Copyrighted work," thus continuing to harm plaintiffs' reputation by continuing to operate. ECF No. 1, ¶¶ 36, 42, 46–47.

Second, other remedies at law are inadequate to compensate plaintiffs. Hines has failed to respond in any way to this lawsuit, despite being properly served. The lack of a response demonstrates that it is likely that Hines will continue to infringe Grover's copyright. *See Thousand Oaks Barrel Co. v. Barrels*, No. 1:21cv848, 2022 WL 3337798, at *11 (E.D. Va. July 11, 2022), *report and recommendation adopted*, No. 1:21cv848, 2022 WL 4378689 (E.D. Va. Sept. 22, 2022) ("This lack of an appropriate response demonstrates a near certainty of continuing copyright infringement and makes it impossible to determine the actual profits and damages in the case.").

Third, the only "hardship" Hines would experience from a permanent injunction is to follow copyright law. A permanent injunction would force Hines to stop selling the copyrighted works and deliver to Grover any illicit games or other products that Hines has that infringe Grover's copyright. The hardship for plaintiffs in not receiving an injunction would be severe. As stated by plaintiffs, "[c]onsumers have associated, and likely will continue to associate, [Hines'] Illicit Games with Banilla and Grover because . . . [Hines'] Illicit Games mimic in every way the experience provided by the Fusion 4 Games." ECF No. 1, ¶ 57.

Finally, the public interest favors an injunction. As noted by this Court, "[i]t is easy to understand that the public interest reflected in the Constitutional protection of copyright, and the congressional enactment of the Copyright Act, is enhanced by issuance of a permanent injunction where copyright infringement has taken place." *EMI Apr. Music, Inc.*, 618 F. Supp. 2d at 511.

Accordingly, the undersigned recommends that Hines be enjoined from continuing to infringe Grover's copyrighted Fusion 4 video game by using, publicizing, displaying, and marketing the illicit games.

Additionally, pursuant to 17 U.S.C. § 503(b), a court may order "the destruction or other reasonable disposition of all copies . . . found to have been made or used in violation of the copyright owner's exclusive rights."  Plaintiffs request that Hines deliver to Grover "all products, advertisements, promotional materials, packaging, and other items in his possession or under his control bearing the Copyrighted Work, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof."  ECF No. 12, at 17.  To ensure against any future infringement of Grover's copyrighted Fusion 4 video game, the undersigned recommends that Hines be **ORDERED** to deliver to Grover all products, and associated materials, infringing upon Grover's copyrighted Fusion 4 video game that Hines has in his possession or under his control.

Plaintiffs also request that, pursuant to 17 U.S.C. § 503(a), Hines "immediately deliver to the Court for impoundment the Illicit Games violating Grover's Copyright[]" and provide Grover with information regarding the "number of such Illicit Games" in Hines' possession, where the illicit games were found, the identities of persons that possess illicit games, how the illicit games were obtained by Hines, and the names of persons involved. ECF No. 12, at 16–17. Section 503(a) states that

> (a)(1) At any time while an action under this title is pending, the court may order the impounding, on such terms as it may deem reasonable—
>
> > (A) of all copies or phonorecords claimed to have been made or used in violation of the exclusive right of the copyright owner;
> >
> > (B) of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced; and

(C) of records documenting the manufacture, sale, or receipt of things involved in any such violation, provided that any records seized under this subparagraph shall be taken into the custody of the court.

(2) For impoundments of records ordered under paragraph (1)(C), the court shall enter an appropriate protective order with respect to discovery and use of any records or information that has been impounded. The protective order shall provide for appropriate procedures to ensure that confidential, private, proprietary, or privileged information contained in such records is not improperly disclosed or used.

17 U.S.C. § 503(a).

Plaintiffs fail to provide any information that would give the Court sufficient information to order impoundment. There is no information regarding the illicit games, such as serial numbers or even the current location of the illicit games. The two illicit games have also already been sold to unknown persons. *See Mahmoodian v. Pirnia*, No. 3:11-CV-00005, 2012 WL 4458160, at *9 (W.D. Va. June 7, 2012), *aff'd*, 489 F. App'x 711 (4th Cir. 2012) (finding that it was not necessary to "order the impoundment and destruction of the [copyrighted materials] that have already been sold or otherwise disseminated"). Additionally, the statute allows records to be provided and placed "into the custody of the court," rather than to Grover. 17 U.S.C. § 503(a). Therefore, the undersigned recommends that plaintiffs' request for impoundment and an accounting from Hines regarding the illicit games be **DENIED**.

### 4.   Plaintiffs should be awarded reasonable attorneys' fees and costs.

Plaintiffs also seek an award of "$13,080.50 for attorneys' fees and court costs pursuant to 17 U.S.C. § 505." ECF No. 12, at 16. In support of this request, plaintiffs submit a declaration from attorney Faraci that details his credentials, familiarity with Whiteford, Taylor & Preston, L.L.P. ("WTP")—the law firm where all attorneys working upon this case practice—and its billing practices. ECF No. 12-2. Attached to his declaration are the attorneys' detailed billing records and description of the filing fees. ECF No. 12-2, at 3–6.

18

A court in its discretion "may allow the recovery of full costs" and "may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. In determining whether to grant attorneys' fees and costs to a prevailing party under section 505, the Fourth Circuit has articulated four factors for consideration: "(1) the motivation of the parties, (2) the objective reasonableness of the legal and factual positions advanced, (3) the need in particular circumstances to advance considerations of compensation and deterrence, and (4) any other relevant factor presented." *Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 505 (4th Cir. 1994) (quoting *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 234 (4th Cir. 1993)).

Here, the motivation of plaintiffs to bring this claim appears to be the vindication of their rights under the Copyright Act. *See EMI Apr. Music, Inc.*, 618 F. Supp. 2d at 512. The positions and arguments set forth by plaintiffs are not frivolous. In fact, the allegations support a finding of copyright infringement. Because Hines has failed to respond in any way to this proceeding, plaintiffs should be compensated, and other defendants should be deterred from failing to appear. Therefore, an award of attorneys' fees and costs to plaintiffs is appropriate.

The next question is whether the fees claimed by plaintiffs are reasonable under the circumstances. A court uses the lodestar methodology as a starting point in a fee claim evaluation. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002). Under this method, the court multiplies the number of hours reasonably expended on the case by a reasonable hourly rate. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). In determining the reasonableness of the hours and rate, a court is guided by the following factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount

19

> in controversy and the results obtained; (9) the experience,
> reputation and ability of the attorney; (10) the undesirability of the
> case within the legal community in which the suit arose; (11) the
> nature and length of the professional relationship between attorney
> and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009) (quoting *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)).

Here, plaintiffs do not ask for a specific hourly rate for the attorneys. However, from the billing records, the Court has found that plaintiffs' attorneys are billing at the following hourly rates:

| Attorney | Rate |
|---|---|
| Robert Wm. Best | $432.00 |
| Robert N. Drewry | $370.00 |
| Stephen M. Faraci | $570.00 |
| C. Lano | $275.00 |

In support of the rates, attorney Faraci states that he has "been a licensed attorney in the Commonwealth of Virginia since 1998" and has "maintained a broad-based commercial litigation practice for twenty-four (24) years." ECF No. 12-2, ¶ 1. He is also a partner at WTP in Richmond, Virginia. *Id.* Attorney Faraci is currently responsible for setting the hourly rates for attorneys and has "personal knowledge regarding the legal fees and costs incurred by Plaintiffs in the course of WTP's representation of Plaintiffs in this matter." *Id.* However, Faraci does not mention the experience of the other attorneys. Nor does Faraci state that the rates charged in this case are what the attorneys usually charge or that the billed rates are aligned with the market rate. *See Plyler v.*

*Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that the "the burden rests with the fee applicant to establish the reasonableness of a requested rate" and that in addition to the attorney's own affidavits, the fee applicant must produce "specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award") (internal citations and quotations omitted). Additionally, Faraci does not identify "C. Lano" or explain who this person is and their role in the case, and C. Lano is not an attorney of record.

Therefore, the Court will turn to other cases in this district of similar complexity to determine a reasonable rate for the attorneys. The Court has found rates between $240.00 and $400.00 to be a reasonable hourly rate in cases involving copyright infringement. *Tattoo Art, Inc.*, 2012 WL 3912739, at *3, 6 (finding that $300.00 per hour for plaintiff's lead counsel was reasonable); *Ez-XBRL Sols.*, 2018 WL 5808724, at *11 (finding a rate of $400.00 an hour for plaintiff's attorneys to be reasonable); *Joe Hand Promotions, Inc. v. Woldesillassie*, No. 1:19cv0856, 2019 WL 12396971, at *4 (E.D. Va. Dec. 17, 2019), *report and recommendation adopted*, No. 1:19cv0856, 2020 WL 10099814 (E.D. Va. Jan. 23, 2020) (finding a rate of $240.00 per hour was reasonable for an attorney with 14 years of experience based upon what other district courts have awarded for similar default judgment cases). In *Triple Canopy, Inc. v. Greyside Global, LLC*, the Court found that, "[w]hile there is no additional support contained in the supplemental brief concerning what the prevailing market rate for comparable services is in Northern Virginia, the overall average billing rate of $266.88 (total amount of fees divided by total number of hours) does appear to be within the range of comparable hourly rates for the Northern Virginia market." *Triple Canopy, Inc. v. Greyside Glob., LLC*, No. 1:12cv1324, 2013 WL 12087186, at *4 (E.D. Va. Feb. 11, 2013), *report and recommendation adopted*, No. 1:12cv1324, 2013 WL 12090119 (E.D. Va. Mar. 27, 2013).

Here, plaintiffs' attorneys' overall billing rate is $403.77.[6] As outlined above, this exceeds the rate generally found to be reasonable, especially taking into consideration that the $400.00 hourly rate awarded in *Ez-XBRL Solutions, Inc.* was in Alexandria and not Norfolk. *See Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 152 F. Supp. 3d 503, 517 (E.D. Va. 2015) ("The prevailing market rate of attorney's fees must be determined based on the 'relevant community where the district court sits.'" (quoting *Grissom*, 549 F.3d at 321)). The Court also takes into consideration that even though only minimal substantive work was performed in this case, drafting a seven-count complaint involving the Copyright Act and other intellectual property claims takes skill. Therefore, plaintiffs should be awarded a rate of $300.00 per hour.

Having determined the reasonable hourly rates, the Court must now determine whether the hours expended were reasonable. As noted above, plaintiffs have submitted a detailed record of the date, attorney, description, and hours worked. This work included drafting the complaint, preliminary injunction, and default judgment. ECF No. 12-2, at 3–5. Although 31.40 hours spent on these tasks appear reasonable, the plaintiffs previously filed several copyright infringement suits against various defendants using a complaint and motion for preliminary injunction and supporting memorandum that are substantially similar. *See, e.g., Banilla Games, Inc. v. Kesari Inc.*, No. 2:22cv102 (E.D. Va. filed March 8, 2022); *Banilla Games, Inc. v. Freedom 2410 Inc.*, No. 2:22cv103 (E.D. Va. filed March 8, 2022); *Banilla Games, Inc. v. Nisar*, No. 2:22cv213 (E.D. Va. filed May 17, 2022). Therefore, the Court finds that reducing the time billed for drafting the complaint and preliminary injunction (6.7 hours) by forty percent (40%) is appropriate. *See* ECF No. 12-2, at 3.

---

[6] The Court arrives at this number by dividing the total amount of fees ($12,678.50) by the total number of hours the attorneys billed (31.40 hours).

22

The Court also declines to award the .50 hours C. Lano spent preparing the summons and emailing counsel. ECF No. 12-2, at 3. Plaintiffs fail to explain who this person is and the role they play in this litigation.

Lastly, the Court must determine whether the costs requested by plaintiffs are reasonable. The $402.00 filing fee requested by plaintiffs accurately reflects the filing fee and administrative costs associated with filing this lawsuit. ECF No. 12-2, at 6; *see* 28 U.S.C. § 1914. Therefore, the Court finds that awarding plaintiffs $402.00 in costs in reasonable.

Based upon the reasonable rates, hours, and costs analysis above, the following table reflects the undersigned's recommended attorneys' fees and costs award:

| Rate | Reduced Hours | Rate x Hours | Costs | Total |
|------|---------------|--------------|-------|-------|
| $300.00 | 6.7 x .60 = 4.02<br><br>31.40 - 4.02 - .50=<br><br>26.88 hours | $300.00 x 26.88 =<br><br>$8,064.00 | $402.00 | $8,064.00 + $402.00 =<br><br>$8,466.00 |

## VI.   CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that plaintiffs' motion for default judgment on count one in the complaint be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court recommends that plaintiffs be granted statutory damages in the amount of $20,000.00 plus pre-judgment interest from December 15, 2021 at a rate of six percent (6%) and post-judgment interest calculated under 28 U.S.C. § 1961. Not later than seven days after the final disposition of this report and recommendation, after the Court has resolved any objections, plaintiffs shall submit a final interest calculation to the Court. The Court further recommends that a permanent injunction be **GRANTED** to enjoin Hines from continuing to infringe on Grover's copyrighted Fusion 4 video game and requiring Hines to deliver to Grover all products, and

associated materials infringing upon Grover's copyrighted Fusion 4 video game, in his possession or under his control.  The Court further recommends that attorneys' fees and costs be **GRANTED** to plaintiffs in the amount of $8,466.00.  The Court further recommends that counts two, three, four, five, six, and seven in the complaint be **DISMISSED**.

## VII.   REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.  Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail.  A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof.  *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.  A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

Robert J. Krask
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
October 31, 2022

25